IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF THE F/V JOEY D AND OCEANSIDE MARINE LLC, as owner FOR EXONERATION FROM OR LIMITATION OF LIABILITY IN ADMIRALTY | Civil No. 24-5335 (RMB/EAP)<br><br>**MEMORANDUM ORDER** |

**RENÉE MARIE BUMB, Chief United States District Judge:**

Plaintiff, Oceanside Marine LLC (Oceanside), owns a commercial fishing vessel, the "Joey D." [Compl. ¶ 3 (Docket No. 1).] Oceanside filed a Complaint seeking to limit its liability under the Shipowners' Limitation of Liability Act (Limitation Act), 46 U.S.C. § 30501 *et seq.*, and exoneration under Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims (Rule F) after receiving a written claim from a deckhand who suffered an injury while working on the Joey D. [*Id.* ¶¶ 10-11.] According to Oceanside, on October 7, 2023, the Joey D was on a voyage fishing for clams. [*Id.* ¶¶ 5-6.] During the voyage, a deckhand suffered burns to his arm after picking up some debris he found in clams caught in the clam dredge. [*Id.* ¶¶ 6-8.] A shipmate took the deckhand to the hospital where the deckhand learned he received chemical burns from exposure to mustard gas. [*Id.* ¶ 9.] The deckhand then asserted a claim against Oceanside and the Joey D. [*Id.* ¶¶ 10-11.]

By the Complaint, Oceanside asks for, among other things, liability limitation and exoneration from any claim arising out of the October 7th voyage. [*Id.* Wherefore Clause.] Oceanside also asks this Court to accept the proffered Ad Interim Stipulation of Value in Lieu of Security (the Stipulation), issue a notice of monition for any claims arising out of the

October 7th voyage, and enter a restraining order enjoining any lawsuit, action, or proceeding that may have been commenced "to recover damages for any and all losses or damages occasioned or incurred by or in any way resulting from any injuries resulting or arising out of" the mustard gas incident on the October 7th voyage. [*Id.*]

The Limitation Act and Rule F impose strict requirements a vessel owner must follow when seeking liability limitation and exoneration.  When an owner seeks limitation of liability, the owner must provide security for the benefit of the claimants in "an amount equal to the value of the owner's interest in the vessel and pending freight, or approved security" and "an amount, or approved security, that the court may fix from time to time as necessary to carry out this [Act]." 46 U.S.C. § 30529(b)(1); Fed. R. Civ. P., Supp. R. F(1). The owner may deposit the security with the court or transfer the amount to a trustee appointed by the court. 46 U.S.C. § 30529(b)(1)–(2); Fed. R. Civ. P., Supp. R. F(1).  Rule F(1) requires an owner to give security for "costs and, if the [vessel owner] elects to give security, for interest at the rate of 6 percent per annum from the date of the security." Fed. R. Civ. P., Supp. R. F(1).  This District's Local Rules require a vessel owner seeking liability limitation to provide $250 for security for costs as required by Rule F(1).  LAMR(f).  Before a court can issue a monition or injunction, the vessel owner must provide security the court finds acceptable. Fed. R. Civ. P., Supp. R. F(3), (4).  In other words, a court's "approval of the security is a condition precedent to the issuance of the restraining order" and "notice to potential claimants." *In re Star & Crescent Boat Co.*, 519 F. Supp. 3d 752, 759-60 (S.D. Cal. 2021).  So too is the security for costs.  Fed. R. Civ. P., Supp. R. F(3), (4).

In admiralty cases, the United States Supreme Court has recognized alternative means of security may suffice rather than having the vessel owner deposit funds or transfer the

owner's interest in the vessel, like a stipulation of value. *Hartford Acc. & Indem. Co. of Hartford v. S. Pac. Co.*, 273 U.S. 207, 218-19 (1927) ("Whenever a stipulation is taken in an admiralty suit, for the property subjected to legal process and condemnation, the stipulation is deemed a mere substitute for the thing itself, and the stipulators liable to the exercise of all those authorities on the part of the court, which it could properly exercise, if the thing itself were still in its custody." (quoting *The Palmyra*, 25 U.S. 1, 10 (1827))). "[A] stipulation is generally accepted as security if backed up by insurance covering the vessel's potential liabilities." *Star & Crescent Boat Co.*, 519 F. Supp. 3d at 758 (alteration in original, citation omitted); *see also In re Stoughton*, 2020 WL 2557332, at *1 (W.D. Wash. May 20, 2020) ("Security may be in the form of deposit cash, a bond, or a stipulation backed up by insurance."). Courts have accepted stipulations of value as sufficient security if a letter of undertaking from the insurer supports the stipulation. *In re Oceanside Investments*, ___ F. Supp.3d ___, ____, 2023 WL 8522584, at *4 (S.D. Cal. Dec. 8, 2023) (collecting cases); *see also Panaconti Ship. Co. v. M/V Ypapanti*, 865 F.2d 705, 708 (5th Cir. 1989) ("Letters of undertaking may similarly secure a claim even without the formal arrest of the vessel.").

On the record here, the Court cannot issue the requested monition or restraining order because: (1) Oceanside has not provided security for costs; (2) the Stipulation is problematic; and (3) the Stipulation does not account for Rule F(1)'s six percent interest on the security.

First, Oceanside has not provided security for costs required by Rule F(1) and this District's Local Rules. Fed. R. Civ. P., Supp. R. F(1); LAMR(f). Without security for costs, the Court cannot grant the requested relief. *In re Oceanside Invs.*, 2023 WL 6966079, at *1-2 (S.D. Cal. Oct. 20, 2023) (refusing to issue notice of monition and injunction because, among other reasons, vessel owner did not provide security for costs).

Second, the Court finds the Stipulation inadequate.  Oceanside's counsel, Edward V. Cattell, Esq., provides an affidavit purporting to provide the Joey D's value and insurance coverage for the vessel.  [Stipulation ¶¶ 2-6 (Docket No. 1-4).]  Cattell asserts he spoke to Oceanside's President, Daniel P. LaVecchia, who told Cattell the Joey D has a "present value of $4,500,000."  [*Id.* ¶ 2(a).]  Cattell also asserts that LaVecchia provided details on the Joey D's insurance coverage.  [*Id.* ¶ 2(b)-(c).]  According to Cattell, the Joey D has "hull and machinery insurance" with $4.5 million in coverage, $1,000,000 primary liability insurance (Primary Liability Policy), $4,000,000 "excess of the primary" liability insurance coverage (First Excess Primary Liability Policy), and "$5,000,000 second excess over the primary and first layer of excess" coverage (Second Excess Primary Liability Policy).  [*Id.*, Ex. A.]  Cattell adds he spoke to a representative from the Joey D's primary liability insurer who told him that the "policy [has] an eroding one million dollar limit and therefore, the amount available to be collected if and when payment is due would be the amount of monies still available on the policy at the time of collection and nothing more."  [*Id.* ¶ 3.]  Cattell also asserts he spoke to representatives from the Joey D's first layer of excess liability insurers.  [*Id.* ¶ 4.]  According to Cattell, those representatives "have both approve[d] this Stipulation and stand by ready to pay up to their policy limits the amount in excess of primary insurance to be collected as a result of any settlement of judgment in this proceeding."  [*Id.*]  Cattell also offers up the Second Excess Primary Liability Policy as security.  [*Id.* ¶ 5.]

To start, the Stipulation provides no information on how LaVecchia determined the Joey D's present value.  For example, the Stipulation contains no formal appraisal from a certified marine surveyor on the Joey D's value.  *See Star & Crescent Boat*, 519 F. Supp. 3d at 759 (approving Ad Interim Stipulation of Value where, among other things, vessel owner

submitted a declaration from "an accredited marine surveyor" who "conducted a valuation appraisal of the [v]essel"). Nor does the Stipulation detail how LaVecchia came to the $4.5 million figure, like comparing the Joey D to similar vessels. *Oceanside Invs.*, ___ F. Supp.3d at ___, 2023 WL 8522584, at *4 (approving Ad Interim Stipulation of Value where, among other things, vessel owner submitted a "Declaration of Value" where owner provided vessel's value "based on his experience and his review of comparable sales on websites"). This Court does not layout all the ways vessel owners can provide the present value of their vessel. There are many. That said, an affidavit from a vessel owner's attorney merely stating the owner's bald assertion of value is not one.

Turning to the insurance, Cattell provides no information about how much coverage remains on the Primary Liability Policy. Cattell explains the policy is an eroding one, and the amount available on the policy to pay claims will depend on how much is left on the policy at the time of payment. [Stipulation ¶ 3.] Thus, the Court cannot accept that policy as adequate security. While Cattell has represented that the First Excess Primary Liability Policy insurers have approved the Stipulation and agree to pay up to their policy limits, *see id.* ¶ 4, Oceanside has not provided a declaration or a letter of undertaking from either insurer. The Court also notes the First Excess Primary Liability Policy contains an exclusion clause for "Chemical, Biological, Bio-Chemical and Electromagnetic" conditions. [*Id.* Ex. A.] Given the allegation that mustard gas caused the deckhand's chemical burns, *see* Compl. ¶ 4, its unclear to the Court whether that policy's exclusion applies to the deckhand's injury. And Oceanside offers no explanation on whether it does or not. Thus, without a declaration and letters of undertaking from the insurers, the Court cannot accept the Stipulation as adequate security. *Oceanside Invs.*, 2023 WL 6966079, at *2 (refusing to accept to Ad Interim Stipulation

5

where vessel owner did not provide a letter of undertaking from insurer and ordering owner to supplement the stipulation "with a letter of undertaking from [insurer]").

Finally, on top of those problems, the Stipulation provides no provision on Rule F(1)'s six percent interest requirement. So the Court cannot accept it. *Contra Stoughton*, 2020 WL 2557332, at *2 (finding vessel owner complied with Limitation Act and Rule F where "Plaintiff has filed a letter of indemnity issued by [insurer], guaranteeing payment in favor of any claimant up to and not exceeding $66,020.00—an amount reflecting Plaintiff's vessel's value at the time of the collision plus $500 in costs and 6 percent interest on the vessel's value for two years").

Shelving the Limitation Act and Rule F for a moment, Oceanside has not filed any motion requesting the issuance of the monition or restraining order. To make a request for an order (like the ones Oceanside sought here), the Federal Rules of Civil Procedure require a party to file a motion. Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion."). In fact, Rule F requires a vessel owner to make an "application" to the court for a restraining order. Fed. R. Civ. P., Supp. R. F(3) (explaining a court may issue an injunction "on the *application* of the plaintiff" (emphasis added)). Going forward, the Court will reconsider a properly filed motion when Oceanside cures the above deficiencies.

For the above reasons, and for good cause shown,

**IT IS**, on this **13th** day of **May 2024**, hereby:

**ORDERED** that Oceanside's request for a notice of monition and restraining order, as well as the other relief set forth in the Complaint is **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that Oceanside must cure the deficiencies outlined in this Memorandum Order; and it is finally

**ORDERED** that the Court will consider a properly filed motion—that is, a motion that complies with Local Rule 7.1 and Rule F—seeking the relief requested in the Complaint after Oceanside cures the above deficiencies.

<u>**s/Renée Marie Bumb**</u>
RENÉE MARIE BUMB
Chief United States District Judge